1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL C. TURNER,                      No.  2:20-cv-01088 TLN KJN P

12                  Petitioner,

13         v.                                 FINDINGS & RECOMMENDATIONS

14    C. TAMPKINS,

15                  Respondent.

16

17    I.  Introduction

18         Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his October 26, 2017,

20    conviction for meeting a minor for lewd purposes and contacting a minor with the intent to

21    commit a sexual offense, with a prior strike conviction.  Petitioner was sentenced to eight years in

22    state prison.  Petitioner claims:  (1) improper jury instructions; (2) prosecutorial misconduct;

23    (3) insufficient evidence; (4) insufficient reasons to impose the upper term sentence; (5) lower

24    court's ruling was contrary to clearly established law; and (6) ineffective assistance of counsel.

25    After careful review of the record, this court concludes that the petition should be denied.

26    II.  Procedural History

27         On October 26, 2017, a jury found petitioner guilty of meeting a minor for lewd purposes

28    and contacting a minor with the intent to commit a sexual offense, with a prior strike conviction.

1    On November 28, 2017, petitioner was sentenced to eight years in state prison.

2            Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

3    District.  The Court of Appeal remanded the case for resentencing, but otherwise affirmed the

4    conviction.  (ECF No. 21-10.)

5            Petitioner filed several state habeas petitions, which the state courts denied.  (ECF Nos.

6    21-14 to 21-24.)  He filed the instant petition on April 7, 2020.  (ECF No. 1.)  Respondent filed an

7    answer on November 3, 2020.  (ECF No. 20.)  Petitioner filed a traverse on February 8, 2021.

8    (ECF Nos. 27 & 28.)

9    III.  Facts[1]

10           After independently reviewing the record, this court finds the appellate court's summary

11   accurate and adopts it herein.  In its unpublished memorandum and opinion affirming petitioner's

12   judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District

13   provided the following factual summary:

14                       We relate the facts of defendant's crimes here and the procedural
                       background relevant to the issues on appeal when addressing
15                       defendant's claims.

16                       In May 2017, defendant posted an advertisement in the casual
                       encounters section of Craigslist. The post described defendant as a
17                       47-year-old man who recently moved to Platina from the Bay Area
                       and had had no luck meeting anyone. Defendant was "just looking to
18                       meet someone who is open to come hang out for a night or two, eat,
                       [watch] movies, listen to music, have a drink or two, and get naked
19                       in between it all." Defendant ended his post saying, "Other than that
                       I handle myself well when we are slapping sweat and I have been
20                       known to really get along well with younger women :) Let me know."
                       He attached several pictures to the post showing his home and
21                       himself both clothed and nude. Several of the pictures depicting
                       defendant in the nude showed him with an erection.
22
                       Tehama County Bureau of Investigations Officer Heidi Curtis was
23                       monitoring Craigslist's posts for adults attempting to contact minors.
                       Defendant's assertion that he got along well with younger women
24                       alerted Officer Curtis that defendant may be attempting to contact
                       minors for sexual encounters, requiring further investigation. So,
25                       Officer Curtis sent defendant a message through Craigslist posing as
                       "Maddie Paulson." The message read, "I'm for real ... you get along
26

27   _____
     [1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
28   District in <u>People v. Turner</u>, No. C086117, 2019 WL 1970316 (Cal. Ct. App. May 3, 2019), a
     copy of which was lodged by respondent as ECF No. 21-10.

with younger girls huh? ? ?" and included a phone number where "Maddie" could be reached. Thereafter, defendant texted "Maddie" and the two engaged in a several-week-long texting conversation.

In "Maddie's" initial texts she indicated that she was young and in high school. She told defendant she played percussion in the band and that he could not text her after 11:00 p.m. because her mother would freak out. Defendant responded, "Well we dont want mom freaking out now do we :)." Over the course of the next few text conversations, defendant and "Maddie" assured each other they "wouldnt put [each other] off." Defendant then asked "Maddie" whether she "had the experience of a boyfriend yet :)" and to send him a G-rated picture so he could see with whom he was texting. "Maddie" sent defendant a photo of a young blond woman baring cleavage and wearing heavy makeup. The photo would not immediately load on defendant's phone, so he responded "Its cool Maddie. I am very patient and I think about you all day so I am confident that you will look very pleasingtto [*sic*] my eyes :)." Defendant later gave "Maddie" his e-mail address so she would send photos of herself there as well.

Around this same time, defendant drove to Red Bluff, where "Maddie" lived, and texted her that he wished he "could have picked her up from school :)." After "Maddie" said she was at the movies and was sorry to miss him, defendant replied, "Its cool. I was mostly just playing. I didnt expect you would ever want to meet for the first time that way although I would be good with it."

The next day, defendant texted "Maddie" again. He told her his plans for the weekend and then continued, "Of course I am always open to coming down to Red Bluff if you can get away for a few minutes :)." "Maddie" responded that she was not available but would be the next weekend and wondered if they could "Netflix and chill? ?" "Maddie" also asked defendant the age of the youngest girl he had ever hung out with. Defendant responded that he had the capability to stream video and they could "Netflix and chill however long you like :)." Defendant also told "Maddie" he had spent time with a 16 year old but they never touched sexually because of her age. "Maddie" told defendant she was 15 years old and clarified that "Netflix and chill" meant to "hook up." Defendant responded, "We can talk about that after we meet. Being that you say you are under 18 we need to keep our texts PG :) What we discuss in private is our business." He ended this conversation "Goodnite pretty young Maddie :)."

In the next conversation, defendant told "Maddie" he wanted to meet her. He said he knew he liked her because he would usually stop texting with women who did not respond to him promptly, but instead he waited for her responses "becuz I want you." In the next text conversation, defendant again asked "Maddie" if he could meet her. She said she could get away over the weekend but he would need to pick her up. Defendant agreed. He told her that because she had less freedom of movement, he could work around her schedule and they could meet for "coffee or whatever just to make that first connection :)." "Maddie" responded she could "meet anyone for coffee, [but wanted] to do more than that." Defendant later indicated

he did not receive that text message and "Maddie" clarified, "You know what your ad said. That's what I want." Defendant responded "Ok then Maddie. When would you like to meet? Bottom line :)."

The conversation continued with "Maddie" saying, "Depends on how long you want me for. If it's overnight itll have to be a weekend so my mom thinks I'm at a friends house. I'm not allowed to spend the night with friends on school nights." Defendant responded he wanted "Maddie" to spend the night, and "[a]nything else would be a tease :)." Defendant also assured "Maddie" he had condoms when she asked. The two then agreed for defendant to pick up "Maddie" on either Thursday or Friday so that they could spend the weekend together.

As the day approached, the two agreed to meet at the old Walmart in Red Bluff at 9:00 a.m. on Friday morning. The night before the two were to meet, defendant checked in with "Maddie". "Maddie" said she still wanted to meet defendant but was nervous because of the size of his erection in the photos he attached to his Craigslist post. She asked him whether he knew "how to be easy," to which he responed "Of course Maddie. Being easy makes it good and being good makes them come back :)."

After waiting for "Maddie" in the parking lot where he agreed to meet her, defendant became suspicious and drove away. He was arrested during a traffic stop shortly after. Condoms were found upon a search of defendant's home.

(ECF No. 21-10 at 2-4.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v.

_____

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

2   the writ simply because that court concludes in its independent judgment that the relevant state-

3   court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

4   application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

5   550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

6   in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state

7   court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes

8   federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

9   court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v.

10  Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus

11  from a federal court, a state prisoner must show that the state court's ruling on the claim being

12  presented in federal court was so lacking in justification that there was an error well understood

13  and comprehended in existing law beyond any possibility for fair-minded disagreement."  Id. at

14  103.

15      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

16  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

17  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

18  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

19  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

20  considering de novo the constitutional issues raised.")

21      The court looks to the last reasoned state court decision as the basis for the state court

22  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

23  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

24  previous state court decision, this court may consider both decisions to ascertain the reasoning of

25  the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

26  federal claim has been presented to a state court and the state court has denied relief, it may be

27  presumed that the state court adjudicated the claim on the merits in the absence of any indication

28  or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101. It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

1    V.  Petitioner's Claims

2            A.  Improper Jury Instructions

3            Petitioner challenges two jury instructions, CALCRIM Nos. 3408 and 1071, which this

4    court addresses in turn below.

5                i.    CALCRIM No. 3408

6            First, he claims that California's entrapment jury instruction, CALCRIM No. 3408, is not

7    a correct statement of law because it "does not include the language of government inducement or

8    the government initiating the crime."  (ECF No. 1 at 10-11.)  Petitioner also contends that if the

9    federal standards for entrapment had been applied to his state criminal trial, a jury may have

10   reasonably accepted it as a defense.  (Id.)

11           In response, respondent argues that the state court's reasonable determination that

12   CALCRIM No. 3408 was a correct statement of law was not contrary to or an unreasonable

13   determination of Supreme Court law.  (ECF No. 20 at 19.)

14           In a reasoned decision, the state appellate court rejected petitioner's argument on direct

15   appeal.

16                   Moreover, the jury instruction on entrapment, which defendant's
                     counsel requested and presumably approved, is correct and not
17                   misleading as defendant argues. Defendant's complaint is that the
                     jury instruction gives no rule regarding the standard for entrapment
18                   and only examples of what could amount to entrapment. As a result,
                     the jury is left to guess at the benchmark "on which the defense may
19                   rest," especially as it concerns sex crimes. We disagree. The
                     instruction begins with an accurate statement of the entrapment
20                   defense -- "A person is entrapped if a law enforcement officer
                     engaged in conduct that would cause a normally law-abiding person
21                   to commit a crime." Defendant's complaint that the instruction lists
                     no example pertaining to sex crimes is misplaced because the
22                   instruction relates no crime-specific examples at all. To the extent
                     the instruction provides examples, these are examples of officer
23                   conduct that could cause a person to commit a crime in general, not
                     any specific crime. The jury was not left to guess at the benchmark
24                   that applied to sex crimes specifically as defendant argues. The
                     benchmark for sex crimes as it pertains to entrapment is the same for
25                   all crimes and was communicated to the jury in the jury instruction.
                     Thus, the jury instruction accurately related the law of entrapment
26                   and did not confuse the jury as to the law it was to apply.

27   (ECF No. 21-10 at 13; see also ECF No. 21-21 at 4, 13-15; ECF No. 21-22.)

28   ////

                                                      8

1    Petitioner insists that the jury instruction does not adequately reflect California law.  (ECF

2    No. 1 at 10-11.)  But the state appellate court disagreed with petitioner, finding that the

3    instruction was correct under California law.  (ECF No. 21-10 at 13.)  It is axiomatic that a state

4    court's interpretation of state law is binding on a federal habeas court.  Bradshaw v. Richey, 546

5    U.S. 74, 76 (2005); Estelle, 502 U.S. at 67-68.  Because this court cannot second-guess the state

6    court's interpretation of its own laws, this argument fails.

7        On the merits, federal habeas relief is only available if "'the ailing instruction by itself so

8    infected the entire trial that the resulting conviction violates due process.'"  Estelle, 502 U.S. at

9    72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Gilmore v. Taylor, 508 U.S.

10   333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury

11   misapplying state law gives rise to federal constitutional error.  To the contrary, we have held that

12   instructions that contain errors of state law may not form the basis for federal habeas relief.").

13   The instruction cannot merely be "undesirable, erroneous, or even 'universally condemned.'"

14   Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  It must violate a constitutional right.  Id.

15   "[T]he defendant must show both that the instruction was ambiguous and that there was 'a

16   reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its

17   burden of proving every element of the crime beyond a reasonable doubt."  Waddington v.

18   Sarausad, 555 U.S. 179, 190-91 (2009).  The jury instruction "'may not be judged in artificial

19   isolation,' but must be considered in the context of instructions as a whole and the trial record."

20   Estelle, 502 U.S. 72 (quoting Cupp, 414 U.S. at 147).  The Supreme Court has cautioned that

21   there are few infractions that violate fundamental fairness.  Id. at 72-73; see, e.g., Sarausad, 555

22   U.S. at 191-92; Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam) ("Nonetheless, not

23   every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due

24   process violation"); Jones v. United States, 527 U.S. 373, 390-92 (1999); Gilmore, 508 U.S. at

25   344.

26       The state court's determination that "the jury instruction accurately related the law of

27   entrapment and did not confuse the jury as to the law it was to apply" was not objectively

28   unreasonable.  (ECF No. 21-10 at 13.)  Petitioner's counsel requested jury instruction CALCRIM

No. 3408.  (ECF No. 21-1 at 96; ECF No. 21-3 at 67.)  The trial court instructed the jury on

CALCRIM No. 3408 as follows:

> Entrapment is a defense. Mr. Turner has the burden of proving this defense by a preponderance of the evidence. This is a different standard from prove beyond a reasonable doubt. To meet this burden, Mr. Turner must prove that it is more likely than not that he was entrapped.
>
> A person is entrapped if a law-enforcement officer engaged in conduct that would cause a normally law-abiding person to commit a crime.
>
> Some examples of entrapment might include contact like badgering, persuasion by flattery or coaxing, repeated and insistent requests, or an appeal to friendship or sympathy.
>
> Another example of entrapment would be conduct that would make commission of the crime unusually attractive to a normally law-abiding person. Such conduct might include a guarantee that the act is not illegal or that the offense will go undetected, an offer of extraordinary benefit, or other similar conduct.
>
> If an officer simply gave Mr. Turner an opportunity to commit the crime or merely tried to gain Mr. Turner's confidence through reasonable and restrain steps, that conduct is not entrapment.
>
> In evaluating this defense, you should focus primarily on the conduct of the officer. However, in deciding whether the officer's conduct was likely to cause a normally law-abiding person to commit this crime, also consider other relevant circumstances, including events that happen before the crime, Mr. Turner's responses to the officer's urging, the seriousness of the crime, and how difficult it would have been for law-enforcement officers to discover that the crime had been committed.
>
> When deciding whether Mr. Turner was entrapped, consider what a normally law-abiding person would have done in this situation. Do not consider Mr. Turner's particular intentions or character or whether Mr. Turner had a predisposition to commit the crime.
>
> If Mr. Turner has proved that it is more likely than not that he contacted and arranged to meet a minor for lewd purposes because he was entrapped, you must find him not guilty of Penal Code Sections 288.4(b), and 288.3(a).

(ECF No. 21-1 at 96-97; ECF No. 21-3 at 91-92.)  The state appellate court concluded that the

jury instruction was an accurate statement of the entrapment defense.  (ECF No. 21-10 at 13.)

This court agrees.  The California Supreme Court has stated that "the test for entrapment focuses

on the police conduct and is objective."  People v. Watson, 22 Cal. 4th 220, 223 (2000).  The

10

1    defense is established "if the law enforcement conduct is likely to induce a *normally law-abiding*

2    *person* to commit the offense."  (Id.)  "Official conduct that does no more than offer that

3    opportunity for the suspect – for example, a decoy program – is therefore permissible; but it is

4    impermissible for the police or their agents to pressure the suspect by overbearing conduct such

5    as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-

6    abiding person to commit the crime."  People v. Barraza, 23 Cal. 3d 675, 690 (1979); see also

7    Provigo Corp. v. Alcoholic Beverage Control Appeals Bd., 7 Cal. 4th 561, 568 (1994) ("As a

8    general rule, the use of decoys to expose illicit activity does not constitute entrapment, so long as

9    no pressure or overbearing conduct is employed by the decoy.")  Consistent with California law,

10   the jury instruction in this case focused on the officer's conduct.  (ECF No. 21-1 at 96 ("A person

11   is entrapped if a law-enforcement officer engaged in conduct that would cause a normally law-

12   abiding person to commit a crime."); see also id. at 97 ("When deciding whether Mr. Turner was

13   entrapped, consider what a normally law-abiding person would have done in this situation."))

14   Because the jury instruction was neither ambiguous nor was there a reasonable likelihood that the

15   jury misinterpreted the instruction, this court concludes that the state court's decision was not

16   objectively unreasonable.

17            Petitioner also argues that the trial court should have instructed the jury that the prosecutor

18   has the burden of proving beyond a reasonable doubt that petitioner was predisposed to

19   committing the crime before being approached by government agents.  (ECF No. 27 at 22-23,

20   27.)  This is not the law in California.  The California Supreme Court has reiterated that for an

21   entrapment defense "such matters as the character of the suspect, his predisposition to commit the

22   offense, and his subjective intent are irrelevant."  Barraza, 23 Cal. 3d at 690-91; see also People

23   v. Smith, 31 Cal. 4th 1207, 1212 (2003) ("The federal test of entrapment, unlike the California

24   test, is subjective and focuses on 'the intent or predisposition of the defendant to commit the

25   crime.'")  "In California, unlike in federal courts, the test for entrapment focuses on the police

26   conduct and is objective."  Smith, 31 Cal. 4th at 1213.  Because petitioner was charged with state

27   law crimes and convicted in state court, the state court correctly instructed the jury according to

28   the state entrapment defense, not the federal entrapment defense.  The state court's decision

1  affirming that jury instruction was not contrary to, or an unreasonable application of, clearly

2  established Supreme Court authority.

3        ii.    CALCRIM No. 1071

4        Second, petitioner argues that it was an error to include California Penal Code § 261.5(c)

5  in CALCRIM No. 1071 because it is not an enumerated offense in California Penal Code

6  § 288.3(a) and there was no evidence to support the charge.  (ECF No. 1 at 12-13.)

7        In response, although the state conceded this was an error in the state appellate court,

8  respondent argues that the state court's decision finding harmless error was not contrary to or an

9  unreasonable determination of Supreme Court precedent.  (ECF No. 20 at 24-31.)

10        The last reasoned rejection of petitioner's claim is the decision of the California Court of

11  Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

12  this claim as follows:

13        As for the charge that defendant contacted a minor with the intent to
14  commit a sexual offense, the court instructed the jury over
defendant's objection that he was guilty if it found he had contacted
15  "Maddie" with the intent to commit unlawful sexual intercourse in
violation of section 261.5, subdivision (c), despite the fact that that
16  section is not an enumerated offense under the charged crime.
(§ 288.3, subd. (a).)

17        Defendant contends, and the People concede, this was error. We
18  agree this section does not appear as an enumerated sexual offense
upon which a guilty finding for contacting a minor can be based.
19  (§ 288.3, subd. (a).) Regardless, the People argue, any error was
harmless beyond a reasonable doubt because the jury made findings
20  equivalent to a violation of section 288, subdivision (c), which is an
enumerated sexual offense under the charged section. We agree.

21        Our Supreme Court has held that an error in instructions on the
22  elements of a crime is harmless "so long as the error does not
vitiate *all* of the jury's findings," meaning it would be harmless error
if it were "clear beyond a reasonable doubt that a rational jury would
23  have rendered the same verdict absent the error." (*People v.*
24  *Merritt* (2017) 2 Cal.5th 819, 829, 831.) It also held that offering an
instruction on an invalid legal theory may be harmless when " 'other
25  aspects of the verdict or the evidence leave no reasonable doubt that
the jury made findings necessary' " to find the defendant guilty under
an alternative, valid legal theory. (*In re Martinez* (2017) 3 Cal.5th
26  1216, 1226, quoting *People v. Chun* (2009) 45 Cal.4th 1172, 1205.)
27  Thus, "we apply the *Chapman* standard [citation] to evaluate an
instruction that improperly defines an element of a charged offense."
(*People v. Stutelberg* (2018) 29 Cal.App.5th 314, 319; *Chapman v.*
28  *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)

Under *Chapman*, an instructional error must result in reversal unless it appears beyond a reasonable doubt that the error did not contribute to the verdict. (*Stutelberg*, at p. 319.)

The jury found defendant went to a prearranged meeting with a minor for the purpose of engaging in lewd or lascivious behavior. (§ 288.4.) It also found defendant contacted a minor with the intent to commit a sexual offense, specifically section 261.5, subdivision (c) -- to engage in unlawful sexual intercourse with a minor under the age of 18 and more than three years younger than defendant. (§ 288.3.) While the intent to commit unlawful sexual intercourse under section 261.5 does not support a conviction for contacting a minor, it and the jury's findings regarding meeting a minor for lewd purposes support such a conviction premised upon an intended violation of section 288.

Section 288, which is an enumerated offense in section 288.3, provides, "Any person who willfully and lewdly commits any lewd or lascivious act ... upon or with the body, or any part or member thereof, of a child ... with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony ...." (§ 288, subd. (a).) Where "the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child ... [the person] shall be punished by imprisonment in the state prison for one, two, or three years ...." (§ 288, subd. (c)(1).)

By finding defendant guilty of meeting a minor for lewd purposes, the jury necessarily found defendant intended to commit a lewd and lascivious act. (See § 288.4.) Through this finding of guilt, it also found defendant was motivated by his abnormal sexual interest in children, thus also fulfilling the specific intent element of section 288 in that defendant acted " 'with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or child ....' " (*People v. Cavallaro* (2009) 178 Cal.App.4th 103, 114.)

As for defendant's victim's age, the jury found "Maddie" was under the age of 18. (See § 261.5, subd. (c).) The only evidence presented on this point was "Maddie's" text message to defendant that she was almost 16 years old, meaning she was 15 years old. Given the exclusive evidence on this point, we are confident beyond a reasonable doubt that the jury would have found "Maddie" was 15 years old at the time of the intended offense.

As for defendant's age, the jury found he was at least three years older than "Maddie." (See § 261.5, subd. (c).) The evidence presented on this point was defendant's Craigslist post, which advertised he was 47 years old. Given this uncontradicted evidence, we are confident beyond a reasonable doubt the jury would have found defendant at least 10 years older than "Maddie" at the time of the intended offense.

Because it is clear the jury would have found defendant intended to commit lewd and lascivious acts on "Maddie" in violation of section 288, subdivision (c)(1) when he contacted her, the omission of this element from the jury instruction was harmless beyond a reasonable

13

1    doubt.

2    Defendant's case must still be remanded for resentencing, however,
     because the term of imprisonment for violating section 288.3
3    predicated upon an intended violation of section 288 is different than
     the term defendant received. A person found guilty of violating
4    section 288.3 "shall be punished by imprisonment in the state prison
     for the term prescribed for an attempt to commit the intended
5    offense." (§ 288.3, subd. (a).) An attempt to commit section 288,
     subdivision (c)(1) is punishable by six months, one year, or 18
6    months. (§§ 288, 664, subd. (a).) Even if sentenced to one-third the
     midterm, doubled pursuant to the three strikes law, as defendant was,
7    defendant would not receive the one year four months to which he
     was originally sentenced. Remand is appropriate for the trial court to
8    properly sentence defendant on this count.

9    (ECF No. 21-10 at 14-16.)

10          Both parties and the state appellate court agree that California Penal Code § 261.5 is not

11   an enumerated offense in California Penal Code § 288.3.  (ECF No. 1 at 12-13; ECF No. 20 at 29;

12   ECF No. 21-10 at 14.)  The state appellate court concluded that the trial court erred in instructing

13   the jury that attempting to or communicating with a minor with the intent to commit a violation of

14   California Penal Code § 261.5, constituted a violation of California Penal Code § 288.3.  (ECF

15   No. 21-10 at 14.)  Applying <u>Chapman v. California</u>, 386 U.S. 18 (1967), the state appellate court

16   held that this error was "harmless beyond a reasonable doubt because the jury made findings

17   equivalent to a violation of section 288, subdivision (c), which is an enumerated sexual offense

18   under the charged section."  (<u>Id.</u>)

19          The question before this court is whether that ruling was contrary to or an unreasonable

20   application of established Supreme Court precedent.  In collateral proceedings, habeas petitioners

21   "are not entitled to habeas relief based on trial error unless they can establish that it resulted in

22   'actual prejudice.'"  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (citation omitted).  This

23   requires showing that there is more than a reasonable probability that the error had a substantial

24   and injurious effect on the jury's verdict.  <u>Id.</u>; <u>see also</u> <u>Davis v. Ayala</u>, 576 U.S. 257, 268 (2015).

25   If the state court analyzed the alleged error under <u>Chapman</u>, which asks whether the reviewing

26   court can declare a belief that the error was harmless beyond a reasonable doubt, a state court's

27   harmless-error determination is reviewed for reasonableness under § 2254(d).  <u>Ayala</u>, 576 U.S. at

28   269 ("When a *Chapman* decision is reviewed under AEDPA, 'a federal court may not award

                                                    14

1   habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'")

2   (quoting <u>Fry v. Pliler</u>, 551 U.S. 112, 119 (2007)). "[T]he <u>Brecht</u> standard 'subsumes' the

3   requirements that § 2254(d) imposes when a federal habeas petitioner contests a state court's

4   determination that a constitutional error was harmless under *Chapman*." <u>Id.</u> at 268 (citing <u>Fry</u>,

5   551 U.S. at 120). "While a federal habeas court need not 'formal[ly] apply both *Brecht* and

6   "AEDPA/*Chapman*,*" AEDPA nevertheless 'sets forth a precondition to the grant of habeas

7   relief.'" <u>Id.</u>

8        After reviewing the record, this court concludes that the state court's harmlessness

9   determination was not unreasonable. The jury found that petitioner was guilty of meeting with a

10  minor for a lewd purpose in violation for California Penal Code § 288.4 (count one). It also

11  found that he contacted a minor with the intent to commit unlawful sexual intercourse,

12  specifically unlawful sexual intercourse with a minor under the age of 18 and more than three

13  years younger than him under California Penal Code § 261.5, in violation of § 288.3 (count two).

14  California Penal Code § 288.3(a) prohibits contact or communication with a minor, or attempts to

15  contact or communicate with a minor, or a person who knows or reasonably should know that the

16  person is a minor, with the intent to commit one of the enumerated offenses. The enumerated

17  offenses include the following sections: 207, 209, 261, 264.1, 273a, 286, 287, 288, 288.2, 289,

18  311.1, 311.2, 311.4, or 311.11 or former Section 288a. Cal. Penal Code § 288.3(a). As noted

19  above, California Penal Code § 261.5 is not an enumerated offense under § 288.3. <u>Id.</u>

20  Nevertheless, the state appellate court determined that including § 261.5 as an enumerated offense

21  in the jury instruction error was harmless error because the jury's factual findings would support a

22  conviction premised on § 288, which is an enumerated offense. Under California Penal Code

23  § 288(a), a person "who willfully and lewdly commits any lewd or lascivious act … upon or with

24  the body, or any part or member thereof, of a child … with the intent of arousing, appealing to, or

25  gratifying the lust, passions, or sexual desires of that person or child, is guilty of a felony. "

26  When "the victim is a child of 14 or 15 years, and that person is at least 10 years older than the

27  child" that person shall be punished according to § 288(c)(1). It was not unreasonable for the

28  state court to conclude that, because the jury found petitioner guilty of meeting a minor for lewd

purposes (count one), it necessarily would have found that his actions satisfied the lewd act requirement under § 288(c)(1) for count two.  There was also evidence to support a jury's finding that the victim was 15 years-old and that petitioner was more than 10 years her senior.  (ECF No. 21-3 at 35, 43.)

In the traverse, the petitioner seems to argue that he could not have violated § 288.3 because the victim was an adult police officer running a sting operation, not a minor.  (ECF No. 27 at 41-42.)  This is not viable defense.  To the contrary, California courts have determined that an actual minor victim is not required for a conviction under this statute.  See, e.g., People v. Moses, 10 Cal. 5th 893, 903-04 (2020); People v. Korwin, 36 Cal. App. 5th 682, 689 (2019) (noting that the court's interpretation is "consistent with cases holding that the lack of an actual minor is not a defense to an attempt to commit a sex offense against a minor.")  Such as in Korwin, petitioner was aware that the victim "Maddie" was a minor.  She sent him several text messages suggesting that she was young and in high school.  (ECF No. 21-3 at 33; see also id. at 35 ("I did several texts to indicate that I was very young, that I was in high school and my mom took my cell phone away. I got in trouble. I didn't do my chores. I had to go to school early. I had band practice."); see also id. at 25 ("I told him I was almost 16 but I looked older.").)

The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.  Accordingly, this court recommends denying habeas relief on this claim.

B. Prosecutorial Misconduct

Petitioner claims that "the prosecutor deliberately misled the jury on the rules of entrapment and misstated the facts of the record to fit the instructions of [CALCRIM No. 3408]." (ECF No. 1 at 13; see also ECF No. 21-7 at 27.)  He also claims that "it is reasonable to conclude that with the proper instructions of entrapment, the prosecutor could not have made the arguments that he did, and thus the facts of this matter could not have been misrepresented and the instructions misstated by the prosecutor as they were."  (Id. at 14.)  To the extent that petitioner is arguing that CALCRIM No. 3408 is an incorrect statement of law, this court already resolved that issue in claim one above.

In response, respondent argues that the state court's denial of petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application of federal law.  (ECF No. 20 at 32-37.)

In the last reasoned opinion, the state appellate court rejected petitioner's claim.

### A

### *Procedural Background*

Defendant relied on the defense of entrapment. To this end the jury was instructed, "A person is entrapped if a law enforcement officer engaged in conduct that would cause a normally law-abiding person to commit a crime." The instruction provided several examples, including if the officer's conduct amounted to "badgering, persuasion by flattery or coaxing repeated and insistent requests or an appeal to friendship or sympathy." Another example included conduct that would make a crime unusually attractive, such as "a guarantee that the act is not illegal or that the offen[s]e will go undetected, an offer of extraordinary benefit or other similar conduct." Entrapment, however, is not when an officer simply gave defendant "an opportunity to commit the crime or merely tried to gain [defendant]'s confidence through reasonable and restrained steps ...." The focus must be on the officer's conduct. "However, in deciding whether the officer's conduct was likely to cause a normally law-abiding person to commit this crime, also consider other relevant circumstances including evidence that happened before the crime, [defendant]'s responses to the officer's urging, the seriousness of the crime and how difficult it would have been for law enforcement officers to discover that a crime had been committed. [¶] When deciding whether [defendant] was entrapped, consider what a normal law-abiding person would have done in this situation. Do not consider [defendant]'s particular intentions or character or whether [defendant] had a predisposition to commit the crime."

During the prosecutor's rebuttal argument and in response to defendant's entrapment defense, he urged the jury to carefully read the instruction on entrapment because he thought defense counsel misrepresented it to the jury. The prosecutor then argued that being provided with an opportunity to commit a crime is not enough to show entrapment. "You will see [the instruction], but it has to rise far beyond just making it available. What it boils down to, and you make your own interpretation of the instruction when you hear it, but it is you have to find someone who is never inclined to commit a crime and for the police officers to put so much pressure on that person, influence them so heavily that a person who was not inclined to commit a crime at all, not inclined to do the thing that they are talking about, that his will was overwhelmed by the law enforcement pressure and he went ahead and did it or attempted to do it, when you go through these text messages, I challenge [you to] find anything along those lines." After going through defendant's text messages with "Maddie," the prosecutor argued the officer did not put "overwhelming hideous pressure" on defendant that would make a

17

"normally law abiding man" drive an hour to pick up a 15-year-old girl to take her to his house. The prosecutor concluded by asking the jury, "Did the police do anything that was so over the top, so outrageous that a normal law-abiding person would sort of lose their free will and then do a criminal act? No. They provided an opportunity for this man to come down and he took it."

## B

### *The Prosecutor Did Not Commit Misconduct*

Defendant contends the prosecutor committed misconduct during closing argument by misstating that the law of entrapment required officers to overwhelm defendant's free will, which prejudiced him because the jury instruction on that defense inadequately explained that entrapment merely required an unreasonable inducement.

The People counter defendant forfeited this contention by failing to object at trial to both the instruction as worded and the prosecutor's argument. Defendant replies that we may reach this issue regardless of his failure because the error resulted in a denial of his "fundamental constitutional rights." We conclude there was no error.

"A prosecutor's misconduct violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct 'that does not render a criminal trial fundamentally unfair' violates California law 'only if it involves " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*People v. Harrison* (2005) 35 Cal.4th 208, 242.) "[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements." (*People v. Marshall* (1996) 13 Cal.4th 799, 831.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.) The court must consider the challenged statements in the context of the argument as a whole to make its determination. (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159.)

Defendant argues the prosecutor's statements equated the defense of entrapment to duress, in that the prosecutor's language was "extreme" pointing to a requirement defendant not be inclined to commit the crime in the first place and the officer's conduct overwhelmed his will. "In California, the test for entrapment focuses

on the police conduct and is objective." (*People v. Watson* (2000) 22 Cal.4th 220, 223.) "[T]he proper test of entrapment in California is the following: was the conduct of the law enforcement agent likely to induce a normally law-abiding person to commit the offense? ... Official conduct that does no more than offer that opportunity to the suspect -- for example, a decoy program -- is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." (*People v. Barraza* (1979) 23 Cal.3d 675, 689-690, fn. omitted.) The California standard presumes that a law-abiding person would "normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully." (*Id.* at p. 690.)

It is not reasonably likely the jury understood or applied the prosecutor's statements as to change the standard required for an entrapment defense. When relating the law, the prosecutor focused on the officer's conduct and not defendant's predisposition to commit the crimes charged. While defendant argues the prosecutor told the jury it must find he was never inclined to break the law, we read the prosecutor's statements differently. The prosecutor was not talking about defendant specifically, he was talking about a law-abiding person in the sense that that person was never inclined to break the law. Nor did he say the jury must make a finding that defendant was a law-abiding person, only that the officer's conduct is judged from that perspective. This is an accurate statement of the law. (See *People v. Barraza*, *supra*, 23 Cal.3d at pp. 689-690.)

The prosecutor's statements about officer conduct needing to overwhelm a person's free will or be so over the top and outrageous as to make a law-abiding person break the law was similarly not misleading. While the prosecutor used adjectives defendant now complains of, he used them in relation to the standard -- that the conduct result in a law-abiding person breaking the law. A reasonable interpretation of the prosecutor's statements is that if the effect of the officer's conduct is that a law-abiding person would break the law, then that conduct is outrageous and over the top.

Further, the prosecutor told the jury multiple times to pay close attention to the entrapment instruction and to judge for itself what the law was. The prosecutor did not state the law as he understood it as an objective fact but maintained it was his reading of the instruction and the jury should read it to come to its own conclusions. Given the jury was instructed it should ignore argument that conflicts with the jury instructions, we presume the jury did so. (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1337.)

Moreover, the jury instruction on entrapment, which defendant's counsel requested and presumably approved, is correct and not misleading as defendant argues. Defendant's complaint is that the jury instruction gives no rule regarding the standard for entrapment and only examples of what could amount to entrapment. As a result, the jury is left to guess at the benchmark "on which the defense may rest," especially as it concerns sex crimes. We disagree. The

instruction begins with an accurate statement of the entrapment defense -- "A person is entrapped if a law enforcement officer engaged in conduct that would cause a normally law-abiding person to commit a crime." Defendant's complaint that the instruction lists no example pertaining to sex crimes is misplaced because the instruction relates no crime-specific examples at all. To the extent the instruction provides examples, these are examples of officer conduct that could cause a person to commit a crime in general, not any specific crime. The jury was not left to guess at the benchmark that applied to sex crimes specifically as defendant argues. The benchmark for sex crimes as it pertains to entrapment is the same for all crimes and was communicated to the jury in the jury instruction. Thus, the jury instruction accurately related the law of entrapment and did not confuse the jury as to the law it was to apply. Accordingly, there was no prosecutorial misconduct.

(ECF No. 21-10 at 9-13; see also ECF Nos. 21-21 & 21-22.)

In reviewing the prosecutor's alleged misconduct, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (Donnelly, 416 U.S. at 643 (1974)); see also Parker v. Matthews, 567 U.S. 37, 45 (2012) (per curiam).  It "is not enough that the prosecutors' remarks were undesirable or even universally condemned."  Darden, 477 U.S. at 181 (citation omitted). "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly, 416 U.S. at 647 (1974).  In making its determination, the court should consider the prosecutor's comments in the context of the entire trial record.  Hein v. Sullivan, 601 F.3d 897, 913 (9th Cir. 2010).  "[T]he Darden standard is a very general one," and courts, therefore, have "more leeway . . . in reaching outcomes in case-by-case determinations."  Parker, 567 U.S. at 48 (internal quotation marks omitted).  Even if there was prosecutorial misconduct, habeas relief is only warranted if petitioner can establish that the error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht, 507 U.S. at 637 (citation omitted); see also Parle v. Runnels, 387 F.3d 1030, 1044 (9th Cir. 2004).

Here, the state court's rejection of petitioner's prosecutorial misconduct claim was not objectively unreasonable.  After reviewing the record, this court finds that the prosecutor's comments did not make the trial so unfair as to constitute a denial of due process.  To the

1   contrary, the prosecutor's closing arguments closely tracked California's entrapment defense.

2   During closing argument, the prosecutor referred to the jury instructions.  (ECF No. 21-3 at 72

3   (reading aloud an excerpt of CALCRIM No. 3408 stating that "[a] person is entrapped if the law

4   enforcement officer engaged in conduct that would cause a normal law-abiding person to commit

5   a crime."); see also id. at 78 ("I need for you to pay careful attention to the jury instruction on

6   entrapment that is provided to you by the court…."))  Consistent with the jury instruction, the

7   prosecutor argued that "[m]aking the opportunity available to the defendant does not constitute

8   entrapment…[i]t has to be far more than that."  (Id. at 80; ECF No. 21-1 at 96 (jury instruction

9   stating "[i]f an officer simply gave Mr. Turner an opportunity to commit the crime…, that

10  conduct is not entrapment."))  The prosecutor stressed that the real question is whether "the police

11  [did] anything that was so over the top, so outrageous that a normal law-abiding person would

12  sort of lose their free will and then do a criminal act" and argued that the answer was no.  (ECF

13  No. 21-3 at 83; ECF No. 21-1 at 96 (jury instruction stating "[a] person is entrapped if a law-

14  enforcement officer engaged in conduct that would cause a normally law-abiding person to

15  commit a crime."))  The prosecutor's comments did not manipulate or misstate evidence or

16  implicate any other specific constitutional right of the accused.  See Darden, 477 U.S. at 181-82.

17  The trial court mitigated the risk of jury confusion by instructing the jury that their decision

18  should be based on the evidence and cautioned that the attorneys' arguments are not evidence.

19  (ECF No. 21-3 at 81; see also ECF No. 21-3 at 69 (during closing argument, the prosecutor stated

20  that the jury already heard the evidence and will now hear that lawyers' opinions and

21  interpretation of the evidence.))  The trial court told that jury that "[i]f you believe the attorneys'

22  comments on the law conflict with my instructions, you must follow my instructions."  (ECF No.

23  21-3 at 82.)

24       In the traverse, petitioner seems to be arguing that the prosecutor's direct examination

25  questions manipulated and misrepresented the evidence to the jury.  (ECF No. 27 at 46-48.)  This

26  fails because an attorney's questions are not evidence.  Before opening statements, the trial court

27  instructed the jury on this issue, stating "attorneys are not witnesses."  (ECF No. 21-3 at 20

28  ("Since it is your duty to decide the case solely on the evidence, which you see or hear in this

1   case, you must not consider as evidence any statement of any attorney made during trial.")) It is

2   axiomatic that a jury is presumed to follow its instructions. <u>Weeks v. Angelone</u>, 528 U.S. 225,

3   234 (2000). Petitioner has not provided any reason for this court to reject that presumption here.

4          Petitioner also asserts that prosecutor's entire closing statement mischaracterized the

5   evidence because it framed petitioner as "an aggressive predator and not the passive prey that

6   petitioner was to a government decoy program that stalked and pursued him." (ECF No. 27 at 49-

7   51.) This argument is based on a misunderstanding of closing arguments. "The government's

8   closing argument is that moment in the trial when a prosecutor is compelled to reveal her own

9   understanding of the case as part of her effort to guide the jury's comprehension." <u>Gautt v.</u>

10  <u>Lewis</u>, 489 F.3d 993, 1013 (9th Cir. 2007). "Counsel are given latitude in the presentation of

11  their closing arguments, and courts must allow the prosecution to strike hard blows based on the

12  evidence presented and all reasonable inferences therefrom." <u>Ceja v. Stewart</u>, 97 F.3d 1246, 1253

13  (9th Cir. 1996) (internal quotation marks omitted). After reviewing the trial record, this court

14  concludes that prosecutor's closing arguments did not mischaracterize the evidence in violation of

15  petitioner's due process rights. The prosecutor's theory of the case was unfavorable to petitioner,

16  but that does not amount to prosecutorial misconduct.

17         The state court's decision was not contrary to, or an unreasonable application of, clearly

18  established Supreme Court authority. This court recommends denying habeas relief on claim

19  two.

20         C. Insufficient Evidence

21         Petitioner claims that there is insufficient evidence to support his convictions under

22  California Penal Code §§ 288.4(b) and 261.5(c). (ECF No. 1 at 5, 14-17; ECF No. 27 at 66-87.)

23         In response, respondent argues that the state court's denial of petitioner's claim that there

24  was insufficient evidence of his unnatural or abnormal sexual interest in children (§ 288.4(b)) or

25  that he had intercourse with a minor (§ 261.5(c)) was not contrary to, or an unreasonable

26  application of, federal law. (ECF No. 20 at 37-43.)

27         In the last reasoned opinion, the state appellate court rejected petitioner's claim as

28  follows:

Defendant contends there was insufficient evidence to support the jury's finding he harbored an unnatural and abnormal sexual interest in children, requiring reversal of his conviction for meeting a minor for lewd purposes. We disagree.

We review sufficiency of the evidence challenges for substantial evidence: " ' "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' [Citation.] '[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] 'Evidence is sufficient to support a conviction only if it is substantial, that is, if it " ' reasonably inspires confidence' " [citation], and is "credible and of solid value."' ' " (*People v. Fromuth* (2016) 2 Cal.App.5th 91, 103-104.)

To prove defendant met with a minor for lewd purposes under Penal Code[1] section 288.4, the prosecution was required to show, among other things, that defendant was motivated by an unnatural interest in children, and that his unnatural interest in children was a substantial factor in the commission of the crime. (*People v. Fromuth*, *supra*, 2 Cal.App.5th at p. 103.) Defendant argues the prosecution did not make this required showing because the evidence "established at most that [he] allowed himself to be drawn into a tentative tryst with a purported underage female" not that an unnatural and abnormal sexual interest was the motivation for the meeting. In fact, he argues, "[t]he record demonstrates that the unnatural and abnormal motivation for this purported contact was entirely from the law enforcement side. [Defendant] finally went along with the officer's sexual proposal, but there was no evidence that [defendant] had a pre-existing unnatural and abnormal sexual interest in children." As the People point out, defendant's interpretation of the evidence is either inaccurate or in the light most favorable to him and not the judgment as required.

[N.1 Further section references are to the Penal Code unless otherwise indicated.]

Defendant points to multiple instances he believes show his reluctance to engage in a sexual relationship with "Maddie." First, he cites his text message telling "Maddie" their texts should be PG after he learned she was underage. Defendant's recital of the text messages is inaccurate. True, after defendant learned "Maddie" was underage he told her their contact needed to be PG in character, but this was not meant to define the parties' relationship. Instead, it was for maintaining the illusion of innocence. "Maddie" had just informed defendant the meaning of the phrase to "Netflix and chill" (which the two agreed to do when they met) was to "hook up." Defendant's response was not to correct "Maddie's" misconception of their relationship but to say they could "talk about that after we meet. Being that you say you are under 18 we need to keep our texts PG :) What we discuss in private is our business." This response is sexual in nature, contrary to defendant's assertion. He encouraged

"Maddie" to act innocent in text messages that could later be viewed by others and to wait to discuss incriminating topics until they were engaged in a private verbal conversation.

Defendant next points to "Maddie's" text that she did not want to meet him for coffee but wanted what he promised in his Craigslist post. He argues his response -- "I did not get that" -- showed surprise regarding the sexually explicit nature of "Maddie's" comment. This is not an accurate description of this exchange either. Up to this point in their conversation, it was defendant who always suggested meeting and, in the conversation before this one, he told "Maddie" he "want[ed] her." In the exchange defendant cites he did not show surprise at the content of "Maddie's" text when he said, "I did not get that," he simply stated he did not receive her previous text saying that she wanted to meet for more than coffee. Indeed, before the text defendant cites, the two exchanged messages clarifying what text messages they actually received. Defendant seemed to agree with "Maddie's" ultimate purpose to meet for what defendant promised in his post because he immediately asked her when the meeting would occur and voiced his preference that it be overnight because "[a]nything else would be a tease :)." This confirmed the sexual nature of the two's text exchange in addition to defendant's assurance to "Maddie" that he had condoms.

Defendant also argues "Maddie's" enthusiastic text messages regarding the planned meeting and the size of his penis served to pepper the conversation with sexual overtones that were one sided and not on the part of defendant. This ignores the fact that defendant also sent unsolicited text messages to "Maddie" about his excitement and that the day of the proposed meeting, defendant texted "Maddie" first to check in with her about whether they still had a plan to meet. Defendant argues at this point it was doubtful he intended to meet with "Maddie" but nothing in the text exchange supports that argument. The day before the scheduled meeting, defendant and "Maddie" solidified their plans to meet and defendant assured her he would be gentle with her given the size of his penis because he wanted her to continue seeing him.

Overall, defendant's text messages were more than just flirtatious messages with a girl defendant knew to be underage. The messages alluded to sexual intercourse both on the part of defendant and "Maddie." Every time the topic of meeting each other was brought up, it was defendant who suggested it. Indeed, while "Maddie" said she wanted what defendant promised in his post, it was defendant who wanted to know when that was to occur. Defendant was also the one who chose to have an overnight visit where condoms would be used and assured "Maddie" he would be gentle with her. From this interaction, it was reasonable to infer that defendant was substantially motivated to meet "pretty young Maddie" because he planned to have sexual contact with her, thus demonstrating his unnatural and abnormal sexual interest in children.

Defendant's reliance on *Jacobson* is misplaced. *Jacobson* involved 26 months of repeated mailings and communications from government agents and fictitious organizations to lure the defendant

24

1  into receiving child pornography. (*Jacobson v. United States* (1992)
2  503 U.S. 540, 550 [118 L.Ed.2d 174, 185].) The Supreme Court
   concluded the government did not meet its burden regarding the
3  defendant's intent because "the prosecution must prove beyond
   reasonable doubt that the defendant was disposed to commit the
4  criminal act prior to first being approached by Government agents."
   (*Jacobson*, at p. 549 [118 L.Ed.2d at pp. 184].) By contrast here,
5  defendant was the one to post an advertisement for younger women
   and it was he who asked to meet "Maddie" multiple times over the
6  course of their texting conversation. He further chose to have an
   overnight visit with "Maddie," which defendant's text messages
7  implied would be sexual in nature.

8  Defendant's attempt to distinguish *Fromuth* is unavailing.
   In *Fromuth*, the defendant was convicted of arranging to meet with a
9  minor for lewd purposes and going to such an arranged meeting.
   (*People v. Fromuth*, *supra*, 2 Cal.App.5th at p. 95.) The defendant
10 argued on appeal the " 'motivated by' " element -- i.e., that he was "
   'motivated by an unnatural or abnormal sexual interest in children' "
11 -- must be a " 'substantial factor' " in the commission of the crime.
   (*Ibid.*) The court agreed but found the prosecution met its burden
12 because the defendant contacted the fictitious minor after she had
   posted an advertisement for a sex partner, at which time she told him
13 she was 15 years old. After the fictitious minor cut off contact with
   the defendant, "he continued for an extended period of time to
14 monitor her advertisement for a sex partner, reinitiated contact, and
   invited her to keep e-mailing him." (*Id.* at p. 104.) Further, the two
15 "did not engage in any significant communication that was unrelated
   to their arrangement of a sexual rendezvous." (*Ibid.*)

16 Similarly, the initial contact between defendant and "Maddie"
   occurred as a result of a posted advertisement for sex. "Maddie" told
17 defendant her age and defendant did not cease contact, but instead
   continued to text "Maddie" and ask to meet her. The text messages
18 were sexual in nature and it is clear the two planned to meet for a
   sexual encounter, given that the meeting would be an overnight visit
19 and the two planned to use condoms. Accordingly, sufficient
   evidence supports defendant's conviction for meeting a minor for
20 lewd purposes.

21 (ECF No. 21-10 at 5-9.)

22      A petitioner is entitled to habeas corpus relief on a sufficiency of the evidence claim, "if it

23 is found that upon the record evidence adduced at the trial no rational trier of fact could have

24 found proof of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 324 (1979);

25 see also Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011).  This inquiry involves two steps.

26 First, this court must review the evidence in the light most favorable to the prosecution.  Jackson,

27 443 U.S. at 319.  If there are conflicting factual inferences, the federal habeas court must presume

28 the jury resolved the conflicts in favor of the prosecution.  Id. at 326 ("[A] federal habeas corpus

court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam).  Second, this court will "determine whether the evidence at trial, including any evidence of innocence, could allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  United States v. Nevils, 598 F.3d 1158, 1165 (9th Cir. 2010) (en banc).

Although this court's review is grounded in due process under the Fourteenth Amendment, the Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n.16; Juan H. v. Allen, 408 F.3d 1262, 1275-76 (9th Cir. 2005).  This court will look to state law to establish the elements of the offense and then turn to the federal question of whether the state court was objectively unreasonable in concluding that sufficient evidence supported that conviction.  See Johnson v. Montgomery, 899 F.3d 1052, 1056 (9th Cir. 2018).

"After AEDPA, we apply the standards of *Jackson* with an additional layer of deference."  Juan H., 408 F.3d at 1274; see Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).  On direct appeal at the state level, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state decision was 'objectively unreasonable.'"  Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

i.   California Penal Code § 288.4(b)

Petitioner challenges the sufficiency of the evidence for his conviction under California Penal Code § 288.4.  That statute punishes "[e]very person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting" with a person he believes to be a minor

26

1  for the purposes of engaging in sexual activity.  Cal. Penal Code § 288.4.  To prove that petitioner

2  was guilty of this crime, the state was required to prove the following elements:  (1) petitioner

3  arrange a meeting with a person he believed to be a minor; (2) in doing so, petitioner was

4  motivated by an unnatural or abnormal sexual interest in children; (3) petitioner intended to

5  engage in sexual behavior during the arranged meeting; and (4) petitioner went to the arranged

6  meeting place around the arranged time.  See People v. Fromuth, 2 Cal. App. 5th 91, 106-07

7  (2016); see also ECF No. 21-1 at 116.  A California court found that the element of "motivated by

8  an unnatural or abnormal sexual interest in children" was met when "a 30-year-old male doggedly

9  pursue[d] sex with a stranger he believe[d] to be a 15-year-old girl."  See id. at 106.

10       Here, there was sufficient evidence at trial that could a lead a rationale trier of fact to find

11  that petitioner was motivated by an unnatural or abnormal sexual interest in children in violation

12  of California Penal Code § 288.4(b).  Petitioner posted a Craigslist advertisement for casual

13  encounters looking to meet a woman "who is open to come hang out for a night or two, eat,

14  [watch] movies, listen to music, have a drink or two, and get naked in between it all."  (ECF No.

15  21-2 at 6.)  He stated that he handles himself well when "slapping sweat" and has been known to

16  "really get along well with younger women :)."  (Id.)  Petitioner included clothed and unclothed

17  photos of himself in the advertisement.  (Id. at 6-7.)  "Maddie," a police officer, responded to his

18  advertisement stating, "I'm for real…you get along with younger girls huh???"  (Id. at 10.)  Even

19  before "Maddie" told petitioner she was 15-years-old, she conveyed that she was young, got into

20  trouble with her mom, and played in a school band.  (Id. at 12-24; see also id. at 13 ("Haha you

21  can text prob til like 11. Any later and my mom freaks out."))  When "Maddie" told him she was

22  almost 16, he continued communicating with her and trying to arrange an in-person meeting.  (Id.

23  at 25 ("We can talk about that after we meet. Being that you say you are under 18 we need to

24  keep our texts PG :) What we discuss in private is our business."); id. at 26 ("I want you."); id. at

25  26 ("I just want to see you already Maddie."); id. at 27 ("Sure hope we get to hang out this

26  weekend Maddie."))  When "Maddie" said she wanted what was in his advertisement, petitioner

27  responded "Ok then Maddie. When would you like to meet? Bottom line :)."  (Id. at 29; see id. at

28  34 (in response to "Maddie's" concern that his "thing" was big, petitioner said "[o]f course

Maddie. Being easy makes it good and being good makes them come back.")) Petitioner stated that he would like her to stay "overnight. Anything else would be a tease." (Id.; see also id. at 31 ("It would take one hell of an event for me to not come pick you up Friday Maddie. You just make sure you have an overnight bag ready :)")) "Maddie" told him she was "not on the pill…do u have condoms," and petitioner said "[o]f course :)" (Id. at 29.) Petitioner arranged to meet "Maddie" on Friday at the old Walmart at 9:00 am. (Id. at 33; see also ECF No. 21-3 at 38-39.) Petitioner went to that location at the arranged time, and police officers pulled him over. (ECF No. 21-3 at 41.) Based on an independent review of the record, this court concludes that there was sufficient evidence for the state court to conclude that petitioner had an unnatural or abnormal sexual interest in children in violation of California Penal Code § 288.4(b).

Petitioner argues that he could not have been "motivated by an unnatural or abnormal sexual interest in children" because this was his first sex offense. He is mistaken. The fact that he is a first-time sex offender does not change the outcome. Like in Fromuth, petitioner's conduct in case is enough to support a reasonable inference that his sexual interest in "Maddie" is an example of general sexual interest in children. See Fromuth, 2 Cal. App. 5th at 104. As summarized above, after knowing that she was 15 years-old, petitioner continued to flirt with her, encouraged her to meet him in person, arranged a meeting time and place, and drove to that location with the purpose of taking "Maddie" to his house for the weekend to engage in sexual activities. This is precisely the kind of "unnatural or abnormal sexual interest in children" that this law seeks to punish. See, e.g., id. at 102-06.

Next, petitioner contends that the text messages cannot be used against him because the government initiated the communications with petitioner, citing United States v. Atdilon-Baez, 761 F. App'x 23 (2d. Cir. 2019). (ECF No. 1 at 15; see also ECF No. 27 at 72.) This argument fails for several reasons. First, the cited case is not persuasive authority because it is an unreported case from a different circuit. Second, the cited case concerns the federal entrapment defense, which is not applicable here as discussed in section V.A.i.

    ii.    California Penal Code §§ 261.5(c) and 288.3

Petitioner argues that there was no evidence that he had intercourse in violation of

California Penal Code § 261.5 and that section is not an enumerated offense in California Penal Code § 288.3(a).  (ECF No. 1 at 16-17.)  To the extent petitioner restates his instructional error argument raised in claim one, this court refers to its conclusions in section V.A.ii.

Respondent argues that the state court reasonably determined that there was sufficient evidence of petitioner's intent to violate an enumerated offense in California Penal Code § 288.3(a), and that decision was not contrary to, or an unreasonable determination of, federal law.  (ECF No. 20 at 42-43.)

Petitioner raised this claim before the California Supreme Court, which it summarily denied.  (ECF Nos. 21-21 & 21-22.)

The state court's ruling that there was evidence to support a conviction under California Penal Code § 288.3, with enumerated offense § 288(a), was not objectively unreasonable. California Penal Code § 288.3(a) criminalizes communications or attempts to communicate with a minor, with an intent to commit one of the enumerated offenses, including § 288.  Cal. Penal Code § 288.3(a).  Under California Penal Code § 288(a), a person "who willfully and lewdly commits any lewd or lascivious act … upon or with the body, or any part or member thereof, of a child … with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or child, is guilty of a felony."  When "the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child" that person shall be punished according to § 288(c)(1).  Here, there is sufficient evidence that petitioner, a 47 year-old man, knew he was communicating with a 15 year-old girl named "Maddie," with the intent of meeting in-person to engage in sexual activities.  (ECF No. 21-2 at 25-33; ECF No. 21-3 at 35, 43.)  That conduct is punishable under California Penal Code § 288.3.

Petitioner contends that his conviction cannot be upheld because he did not know her age for the first five days of the conversation.  But petitioner's conviction is not based solely on that evidence.  Considering the entire trial record, a jury reasonably concluded that petitioner intended to engage in sexual intercourse with a 15-year-old girl.  That conduct is criminal.

In the traverse, petitioner argues that the state court was unreasonable in concluding that the intent elements in § 288.3(a) and § 261.5 are similar.  (ECF No. 27 at 78-79.)  This is a

1   question of state law.  Because a state court's interpretation of state law is binding on a federal

2   habeas court, this court will not second-guess the state court's ruling on this matter.  See Richey,

3   546 U.S. at 76; Estelle, 502 U.S. at 67-68.

4          The state court's decision was not contrary to, or an unreasonable application of, clearly

5   established federal law, or that such a finding was based on an unreasonable application of the

6   facts.  This courts recommends denying habeas relief on petitioner's claim three.

7          D. Insufficient Reasons to Support Sentence

8          Petitioner claims that the trial court improperly used the Static 99 assessment tool as the

9   sole aggravating factor to impose the upper term limit on his sentence.  (ECF No. 1 at 6, 17-19.)

10          In response, respondent argues that a state law sentencing error is not cognizable on

11   federal habeas review.  (ECF No. 20 at 43-45.)

12          The last reasoned rejection of petitioner's claim is the decision of the California Court of

13   Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

14   this claim as follows:

15                                      **A**

16                              *Procedural Background*

17          Defendant admitted having previously been convicted of a prior
     strike offense; specifically, a 1984 conviction for first degree
18          burglary. The parties agreed this conviction resulted from defendant
     entering a residence and taking a car from the garage. Before
19          defendant could be sentenced to this offense he was convicted of
     escape. Then in 1988, he was convicted of vehicle theft followed by
20          a 1990 conviction for burglary. Two years later, defendant was again
     convicted of burglary and sentenced to six years in prison. In 1996
21          and in 2000, he was convicted of petty theft with a prior. Also in
     2000, defendant was convicted of second degree burglary, after
22          which he remained crime free until 2012 when he was convicted of
     grand theft. Defendant committed the present offense in 2017.
23

24          While he acknowledged he was sorry for his involvement and
     showed poor judgment in the current offenses, he maintained that he
25          was not a risk to the community and was entrapped by police officers.
     In his written statement to the court, defendant indicated he was a
26          hard worker who usually held multiple jobs. He also indicated he had
     strong support from his ex-wife who told him he could live with her
27          upon his release from prison. Defendant acknowledged his past
     criminal behavior and that it "clearly reflects something that was a
28          problem for me for a long time," however, "[t]he past [nine] years
     would also reflect my ability and effort to eliminate thievary [*sic*] as

                                      30

a bad problem in my life. A bad thief I was, a sex offender I am not."

Defendant was also assessed under the Static-99R risk assessment, which is an actuarial instrument designed to predict the risk of reoffense for sex offenders. He scored "level III which means his relative risk level is average risk which represents the risk of someone in this score group being charged or convicted of another sexual offense within five years after he is released on probation."

Defendant moved the court to dismiss his prior strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. The court denied the motion stating, "My concern with [defendant] is that he now has -- well, he's previously been convicted of seven felonies. I do understand that there was a break between 1998 and 2011, but he has continued his criminal conduct. With the conviction of these two most recent felonies, the Court believes that his seriousness of criminal behavior has increased. [¶] Also, I looked at [defendant]'s attitude towards the current offense, and based on his comments to probation and his view of the behavior, I don't believe that he would be successful on probation in the future. And I also considered the Static 99 results, which indicated that [defendant] is at average risk for re-offense. So, keeping all of those things into consideration, but mostly relying on the fact that he has had a very extensive and very long-term felony convictions dating back 30 years, that I am inclined to -- or I am going to deny the *Romero* motion and I am not going to strike the strike."

The court then sentenced defendant to the upper term of four years, doubled to eight, for meeting a minor for lewd purposes. It sentenced him to eight months, doubled to one year four months, for contacting a minor with the intent to commit a sexual offense but stayed that sentence pursuant to section 654. When announcing sentence, the trial court stated it had read the probation report and found the factors in aggravation outweighed the factors in mitigation. It further voiced its concern that defendant's crimes seem to be increasing in seriousness and that the Static-99R assessment indicated defendant was at an average risk for reoffending.

…

## C

### *The Trial Court Stated Sufficient Reasons To Impose The Upper Term For Meeting A Minor For Lewd Purposes*

Defendant contends the trial court erred by relying solely on the Static-99 assessment when imposing the upper term of imprisonment on his conviction for meeting a minor for lewd purposes. We disagree.

A trial court's decision to impose the upper term is subject to review for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A trial court abuses its discretion if it "relies upon circumstances ... not relevant to the decision or that otherwise constitute an improper basis for [its] decision." (*Ibid.*) In exercising

31

its discretion to impose a sentencing judgment, the court may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. (Cal. Rules of Court, rule 4.420(b).) Even one aggravating factor is enough to justify imposition of an upper term, and a court may minimize or even completely disregard mitigating factors without stating its reasons. (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258.)

Here, the trial court indicated it imposed the upper term on defendant's conviction for meeting a minor for lewd purposes because the Static-99R assessment indicated he was at an average risk of reoffending and also because of the aggravating factors listed in the probation report -- defendant had numerous convictions, served multiple prior prison terms, and had previously been unsuccessful while on parole. The court further stated it was basing its decision on the fact that defendant's crimes increased in seriousness. Thus, even if defendant is right that basing an upper term sentence on the Static-99R assessment alone constitutes an abuse of discretion, that is not what happened here.[2] The court adopted the three reasons stated in the probation report, which articulated factors listed in the California Rules of Court. (Cal. Rules of Court, rule 4.421(b)(2) [numerous crimes], (3) [prior prison term], (5) [performance on probation or parole].) The court also listed one of its own. (*Id.*, rule 4.421(b)(2) [seriousness of crimes].) Defendant does not challenge these findings. Accordingly, the court did not abuse its discretion when sentencing defendant to the upper term for meeting a minor for lewd purposes.

[N.2 While we do not decide the validity of defendant's argument, we note the court is permitted to sentence a defendant based on "[a]ny factor statutorily declared to be circumstances in aggravation or *that reasonably relate to the defendant* or the circumstances under which the crime was committed." (Cal. Rules of Court, rule 4.421(c), italics added.)]

(ECF No. 21-10 at 17-18, 21-22; <u>see also</u> ECF Nos. 21 & 22.)

Federal habeas courts are "limited to deciding whether a conviction violated the Constitution, laws, or treatises of the United States." <u>Estelle</u>, 502 U.S. at 68. A claim regarding the interpretation of California law is generally not cognizable on federal habeas review. <u>See</u> 28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 68. "[F]ederal habeas corpus relief does not lie for errors of state law." <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990). The state court's interpretation of state law is binding on a federal habeas court. <u>Richey</u>, 546 U.S. at 76.

Here, the state appellate court concluded that the trial court did not abuse its discretion when it sentenced petitioner to the upper term. (ECF No. 21-10 at 22.) More specifically, the

1    state appellate court found that trial court did not base its sentencing decision entirely on the

2    Static 99R assessment, but also considered petitioner's prior prison term, performance on

3    parole/probation, and seriousness of the crimes.  (Id.)  This court independently reviewed the

4    sentencing transcript and agrees with the state court's finding.  (See ECF No. 21-3 at 107-12.)

5    Whether these factors are proper aggravating factors for sentencing is a question of state

6    sentencing law; it does not implicate a federal right.  As a result, this court is bound by the state

7    court's interpretation of state sentencing law.

8           Petitioner cites People v. Therrian, 113 Cal. App. 4th 609 (2003), in support of his claim.

9    (ECF No. 1 at 18.)  This case is inapposite.  In Therrian, a California appellate court concluded

10   "that when an expert's opinion regarding the likelihood of defendant reoffending is not based

11   solely upon the results of a Static-99 test (which assigns a risk assessment of reoffending), a Kelly

12   hearing on the admissibility of expert's testimony regarding the test is not required."  113 Cal.

13   App. 4th at 611 (footnote omitted).  There was no sentencing expert in this case, nor was the trial

14   court's sentencing determination based exclusively on the Static 99R report.

15          To the extent that petitioner is attempting to argue that an error in state sentencing law

16   deprived him of due process, this claim lacks merit.  (ECF No. 1 at 19.)  Petitioner may not

17   transform a state law claim into a federal one by merely asserting a violation of due process.  See

18   Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).  A court may only grant habeas relief for a

19   constitutional claim based on a state law error if that error so infected the trial with unfairness that

20   the resulting conviction violates due process.  See Donnelly, 416 U.S. at 643; see also Estelle, 502

21   U.S. at 73 (noting that this category of infractions is very narrow).  For federal habeas relief on a

22   claimed state sentencing error, petitioner must show that there was an error, and the error was "so

23   arbitrary or capricious as to constitute an independent due process or Eighth Amendment

24   violation."  Jeffers, 497 U.S. at 780; see also Richmond v. Lewis, 506 U.S. 40, 50 (1992).

25          Petitioner has failed to prove either.  There was no state law error; the state court found

26   that the Static 99R assessment, criminal record, performance on parole, and seriousness of the

27   crimes were aggravating factors that warranted an upper term sentence.   Assuming that it was

28   improper for the trial court to rely solely on the Static 99R assessment, the trial court did not do

1    so here.  Notably, petitioner does not challenge the other aggravating factors, which the trial court

2    found outweighed the mitigation factors.  (ECF No. 21-3 at 110.)  Nor has petitioner shown that

3    there was anything arbitrary or capricious in the state court's findings.

4         The state court's decision to reject petitioner's sentencing challenge was not contrary to,

5    or an unreasonable application of, clearly established Supreme Court authority, and this court

6    recommends denying habeas relief on claim four.

7         E.  The Lower Court's Ruling was Not Contrary to Clearly Established Law

8         Petitioner claims that the state appellate court's harmless error ruling regarding

9    CALCRIM No. 1071 was a misstatement and misapplication of clearly established law because

10   California Penal Code § 288(c) is not an enumerated offense under California Penal Code

11   § 288.3.  (ECF No. 1 at 19-22; ECF No. 27 at 87. 95-.)

12        In response, respondent argues that the claim is neither cognizable on federal habeas nor

13   was the state court's rejection unreasonable.  (ECF No. 20 at 45.)

14        This claim is not cognizable on federal habeas review.  The state appellate court

15   concluded that a violation of § 288(c) is an enumerated section under § 288.3.  (ECF No. 21-10 at

16   14; see also Cal. Penal Code § 288.3.)  The state court's interpretation of state law is binding on

17   this federal habeas court.  See Richey, 546 U.S. at 76; Estelle, 502 U.S. at 67-68.  Petitioner has

18   failed to cite, nor is this court aware of, any Supreme Court cases to support his argument that the

19   state court's conclusion was contrary to clearly established federal law.  This court finds that the

20   state court's decision was not contrary to, or an unreasonable application of, clearly established

21   Supreme Court authority, and recommends denying habeas relief.

22        F.  Alleged Ineffective Assistance of Counsel

23        Lastly, petitioner raises an ineffective assistance of counsel claim based on the following

24   alleged errors: (1) waiver of preliminary hearing, (2) failure to object to nude photos in Craigslist

25   ad, (3) failure to use an expert witness to rebut the claim that petitioner had an abnormal or

26   unnatural sexual interest in children, (4) failure to object to CALCRIM No. 3408, (5) failure to

27   object to CALCRIM No. 1071, (6) failure to conduct a pretrial investigation, and (7) cumulative

28   error.  (ECF No. 1 at 6, 20-33.)

1    Respondent argues that the state courts reasonably concluded that petitioner has not

2    demonstrated that any of the alleged errors amount to ineffective assistance of counsel.  (ECF No.

3    20 at 48-56.)

4    Petitioner raised these ineffective assistance of counsel claims in state habeas proceedings.

5    (ECF No. 21-16.)  The state court denied his claim that trial counsel was ineffective for not using

6    an expert on procedural grounds.  (ECF No. 21-17 at 2 ("The issue of ineffective assistance of

7    counsel was not raised on appeal, and is therefore barred from being raised in a Writ of Habeas

8    Corpus."))  The state court also stated that even if it considered that claim on the merits, it would

9    deny the claim because it is "entirely based on hearsay and conjecture."  (Id. at 3-4.)  "Likewise,

10   though petitioner alleges that such a psychological examination would have produced 'mitigating

11   evidence' he produces nothing to support that statement.  Nor does he produce anything to

12   indicate that such a psychological examination, and subsequent testimony by the evaluating

13   physician, would have resulted in a different outcome at trial."  (Id. at 4.)  Petitioner raised his

14   other ineffective assistance of counsel claims in subsequent state habeas petitions, which the state

15   court also denied on the merits.  (ECF No. 21-19; ECF No. 21-20 at 2 (holding that "even with

16   the new allegations, under the Strickland standard, petitioner has again failed to show that

17   '…there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

18   proceeding would have been different.'"); see also ECF Nos. 21-23 to 21-26.)

19   To state an ineffective assistance of counsel claim, a defendant must show that (1) his

20   counsel's performance was deficient, falling below an objective standard of reasonableness, and

21   (2) his counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466

22   U.S. 668, 687-88 (1984).  For the deficiency prong, "a court must indulge a strong presumption

23   that counsel's conduct falls within the wide range of reasonable professional assistance; that is,

24   the defendant must overcome the presumption that, under the circumstances, the challenged

25   action 'might be considered sound trial strategy.'"  Id. at 689 (citation omitted).  For the prejudice

26   prong, the defendant "must show that there is a reasonable probability that, but for counsel's

27   unprofessional errors, the result of the proceeding would have been different.  A reasonable

28   probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

1    "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and

2    when the two apply in tandem, review is 'doubly' so."  Richter, 562 U.S. at 105 (internal citations

3    omitted); see also Landrigan, 550 U.S. at 473.  When § 2254(d) applies, the "question is whether

4    there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

5    Richter, 562 U.S. at 105.

6        In summary, this court concludes that the state court's rejection of petitioner's ineffective

7    assistance of counsel claims was not contrary to, or an unreasonable application of, clearly

8    established Supreme Court authority and recommends denying habeas relief.

9            i.    Waiver of Preliminary Hearing

10        Petitioner claims that he was denied effective assistance of counsel when his initial trial

11   counsel, Mr. Miller, convinced him to waive his preliminary hearing as part of a defense strategy

12   but did not disclose that strategy before he left the office and was replaced by new trial counsel,

13   Mr. Hijazeen.  (ECF No. 1 at 6, 22-23.)

14        Here, the state court's rejection of petitioner's claim was not objectively unreasonable.

15   Petitioner explains that Mr. Miller proposed waiving the preliminary hearing, which petitioner

16   agreed to do.  (ECF No. 1 at 22.)  About a month later, Mr. Miller informed petitioner that he

17   would be assigned new counsel.  (Id.)  Petitioner asked his new counsel, Mr. Hijazeen, about Mr.

18   Miller's defense strategy, and Mr. Hijazeen advised petitioner that the case file did not include

19   notes about a particular trial strategy.  (Id.)  He concludes that "no record of the purpose or tactic

20   of said waiver, clearly deprived petitioner of his right to subject the prosecutor['s] case to

21   meaningful adversarial testing, and thus deprived petitioner of effective assistance of counsel at

22   his preliminary hearing, of which in turn infected his trial."  (Id. at 23.)  This is the extent of

23   petitioner's factual support for his claim.  Petitioner does not argue that the waiver was

24   involuntary or unknowing.  Nor does petitioner provide specific evidence to support his claim that

25   his counsel's failure to leave a note outlining the reason he recommended waiving the preliminary

26   hearing was objectively unreasonable.  Even if that performance was deficient, petitioner fails to

27   present any evidence to show that he was prejudiced by Mr. Miller's performance.  (ECF No. 27

28   at 103 (petitioner noting that the impact of his waiver "cannot be possibly assessed or

1   quantified").)  Conclusory, vague statements without factual support cannot support habeas relief.

2   See Greenway v. Schriro, 653 F.3d 790, 804 (9th Cir. 2011).

3          ii.     Nude Photos in Craigslist Ad

4          Petitioner asserts that his counsel was ineffective because he did not object to the nude

5   photos in petitioner's Craiglist ad.  (ECF No. 1 at 23-24.)  He claims that the Craigslist ad was

6   attached to the charge for distributing or showing pornography to a minor, which the prosecutor

7   dismissed before trial.  The prosecutor, petitioner argues, used these nude photos to inflame the

8   jury because they had no "material or relevant value" to the remaining charges.  (Id.)

9          To the extent that the petitioner is arguing that his counsel was ineffective for not

10  objecting to irrelevant or prejudicial evidence, that claim is not cognizable on habeas review.

11  State law determines whether evidence is admissible.  See Holley v. Yarborough, 568 F.3d 1091,

12  1101 (9th Cir. 2009); see also Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005) ("If a state law

13  issue must be decided in order to decide a federal habeas claim, the state's construction of its own

14  law is binding on the federal court.")  Even if the evidence was inadmissible, errors of state law

15  do not warrant federal habeas relief.  Estelle, 502 U.S. at 67; see also Romano v. Oklahoma, 512

16  U.S. 1, 10 (1994) ("That the evidence may have been irrelevant as a matter of state law, however,

17  does not render its admission federal constitutional error."); Johnson v. Sublett, 63 F.3d 926, 930

18  (9th Cir. 1995.  The erroneous admission of evidence is grounds for federal habeas corpus relief

19  only if it made the state proceedings so fundamentally unfair as to violate due process.  See

20  Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

21         If the claim were cognizable, "[u]nder AEDPA, even clearly erroneous admissions of

22  evidence that render a trial fundamentally unfair may not permit the grant of federal habeas

23  corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme

24  Court."  Holley, 568 F.3d at 1101; see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir.

25  2021); Nava v. Diaz, No. 18-16165, 816 F. App'x 192, 193 (9th Cir. Aug. 12, 2020).  Because the

26  Supreme Court has not clearly decided whether the admission of irrelevant or unduly prejudicial

27  evidence constitutes a due process violation sufficient to warrant habeas relief, Holley, 568 F.3d

28  at 1101, this court cannot conclude that the state court's ruling was contrary to, or an

unreasonable application of, clearly established federal law.  See generally, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam); Bradford v. Paramo, No. 2:17-cv-05756 JAK JC, 2020 WL 7633915, at *6-7 (C.D. Cal. Nov. 12, 2020) (citing cases).

Even if the court were to consider the claim, petitioner is not entitled to relief on the merits for a few reasons.  First, petitioner has not demonstrated that the evidence was irrelevant such that his counsel acted deficiently by not objecting to it.  To the contrary, petitioner was charged with meeting a minor for lewd purposes and contacting a minor with the intent to commit a sexual offense.  In the text messages conversations, "Maddie" stated that she wanted what petitioner advertised in his ad, and he said "Ok then Maddie. When would you like to meet? Bottom line :)."  (ECF No. 21-2 at 29.)  The Craigslist ad, including the nude photos, was relevant to whether petitioner intended to engage in sexual activities with a minor.  Second, petitioner has not shown any reasonable likelihood that the exclusion of this evidence would have resulted in a different verdict.  The Craigslist ad was just one piece of evidence; the trial record also included officer testimony and extensive text messages from petitioner to "Maddie" that support a guilty verdict.

        iii.    Failure to Use an Expert Witness

Next petitioner claims that his trial counsel was deficient because he did not investigate an expert witness to rebut the abnormal and unnatural sexual interest in minor as an element to count one. (ECF No. 1 at 24-26.)  Petitioner appears to be, in part, restating his argument there is insufficient evidence that he had an abnormal and unnatural sexual interest in children.  This court addressed that issue in section V.C.i and will do not do so again here.

In response, respondent states that the state court reasonably rejected petitioner's claim because it is based on speculation.  (ECF No. 20 at 51-52.)

Here, the state court's rejection of petitioner's claim that counsel failed to investigate an expert witness was not objectively unreasonable.  Petitioner's argument is mere conjecture as to what an expert could have said.  Specifically, petitioner states that trial counsel did not interview an expert witness.  (ECF No. 1 at 25.)  He claims that trial counsel could have benefited by reviewing an expert report and could have chosen "not to produce it at trial if he did not intend to

1    rely on it."  (Id.; see also ECF No. 27 at 109.)  Petitioner does not provide any evidence to

2    demonstrate what the expert would have said and how this would have impacted the outcome of

3    his trial.  Such speculation as to what an expert would have said is insufficient to establish

4    prejudice for an ineffective assistance of counsel claim.  See Wildman v. Johnson, 261 F.3d 832,

5    839 (9th Cir. 2001) (citing Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997)).

6            iv.    Failure to Object to CALCRIM No. 3408

7        Petitioner claims that trial counsel's failure to object to CALCRIM No. 3408 constitutes

8    ineffective assistance of counsel.  (ECF No. 1 at 26-29; see also id. at 31.)  He contends that "a

9    competent attorney would have investigated the entrapment laws and rules, and therefor[e] would

10   have known CALCRIM 3408 to be defective as to the federal standard and language of

11   entrapment as determined by the higher courts, and accordingly would have been prepared to both

12   object to, and argue his objection of, 3408 to the court."  (Id. at 27.)  Respondent asserts that

13   CALCRIM No. 3408 is a correct statement of law, and petitioner can show no grounds for his

14   counsel to have requested a modification of that instruction.  (ECF No. 20 at 53.)

15       This court agrees with respondent.  As discussed in section V.A.i., CALCRIM No. 3408

16   correctly reflects California's entrapment defense; the federal entrapment defense is inapplicable

17   to petitioner's case because he was charged and convicted of state law crimes by a state court.

18   Petitioner's trial counsel, therefore, could not have been deficient for failing to object to a correct

19   jury instruction.

20           v.    Failure to Object to CALCRIM No. 1071

21       Next, petitioner asserts that trial counsel should have objected to CALCRIM No. 1071 on

22   the grounds that there was insufficient evidence to substantiate that instruction being given to the

23   jury.  (ECF No. 1 at 26-29.)  Respondent argues that the appellate court's conclusion that the

24   instructional error was harmless because the jury made findings equivalent to § 288(c) applies

25   with equal force here.  (ECF No. 20 at 53-54.)

26       This court agrees with respondent.  The state court held that "[w]hile the intent to commit

27   unlawful sexual intercourse under section 261.5 does not support a conviction for contacting a

28   minor, it and the jury's findings regarding meeting a minor for lewd purposes support such a

conviction premised upon an intended violation of section 288." (ECF No. 21-10 at 15.)  In section V.A.ii, this court concluded that the state appellate court's finding was not objectively unreasonable.  This court's conclusion also applies to petitioner's evidentiary challenge to this jury instruction.  Said another way, whether there was sufficient evidence to support a jury instruction for § 261.5(c) is inconsequential to the verdict because the state appellate court held that the jury's factual findings support a conviction under § 288(c)(1).  Petitioner does not provide any evidence to challenge the state court's finding.

Petitioner also claims that his counsel had an obligation to argue in his closing statement that "the court would instruct it on an offense requiring the prosecution to prove that petitioner had sexual intercourse with a minor, and that it could not possibly do so with the facts presented to it." (ECF No. 27 at 115.)  Although the right to effective assistance of counsel extends to closing arguments, counsel is afforded "wide latitude" to determine how to represent his client and "deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam); see also Smith v. Spisak, 558 U.S. 139, 150-54 (2010); Gallegos v. Ryan, 820 F.3d 1013, 1033 (9th Cir. 2016).  There are many reasonable ways to sharpen and clarify issues at summation of trial, and in some cases, "it might sometimes make sense to forgo closing argument altogether." Gentry, 540 U.S. at 6.

Here, defense counsel's failure to raise this argument does not raise a reasonable probability that the outcome would have been different for a few reasons.  First, defense counsel objected to the instruction, but the court rejected that challenge.  (ECF No. 21-3 at 62-64.) Second, in closing arguments, defense counsel focused on his central theme of the case, that petitioner was entrapped.  (ECF No. 21-3 at 75-78.)  Defense counsel seemingly made a tactical decision to focus on the entrapment defense, rather than attempt to contest the evidentiary basis for each charged count.  It is not within this court's purview to second-guess that tactical decision with the benefit of hindsight.  See Strickland, 466 U.S. at 689.

vi.    Failure to Conduct a Pre-trial Investigation

Petitioner also asserts that his counsel was deficient because he failed to (1) research

40

whether petitioner had prior contact with undercover law enforcement officers before his arrest and (2) interview a 51 year-old lady whom he met through the same Craiglist ad to rebut the government's claim that he had an abnormal or unnatural sexual interest in children.  (ECF No. 1 at 29-33.)

As to the first challenge, petitioner claims that his counsel should have engaged in pretrial investigation of his phone records to support his entrapment defense.  He asserts that his phone records included a draft text message to a number that may have belonged to an undercover officer because "the first three numbers of the phone number used in the [April 10, 2017] text are the same as the last three numbers used in the phone number in the instant matter."  (ECF No. 1 at 30.)  Petitioner alleges that further pre-trial investigation would have revealed that he was targeted by a government agent.  (Id.)  This claim cannot succeed.  Petitioner offers no support, besides his own speculation, that this phone number belonged to a police officer and would help support his entrapment defense.  At best, his argument is illogical; the mere coincidence of three digits in two phone numbers does not mean they belong to the undercover officers.  Claims based on such conjecture do not warrant habeas relief.  See Greenway, 653 F.3d at 804.

As to the second challenge, petitioner asserts that his counsel should have talked to a 51 year-old woman whom petitioner met through the same Craigslist ad to rebut the prosecutor's claim that petitioner had an abnormal or unnatural sexual interest in children.  (ECF No. 1 at 33.) This argument lacks merit.  The fact that petitioner may have also been interested in adult women is irrelevant to this case nor does it preclude a finding that he had an abnormal or unnatural sexual interest in children.  Petitioner's legal sexual conduct does not negate his illegal conduct.

Neither of petitioner's claims demonstrate that his counsel's performance was deficient or prejudicial to his defense.  As a result, the state court's rejection of his claim was not objectively unreasonable.

vii.    Cumulative Errors

Lastly, petitioner claims that the cumulative errors of trial counsel deprived him of due process.  (ECF No. 1 at 33.)

The Ninth Circuit has concluded that under clearly established United States Supreme

1   Court precedent the combined effect of multiple trial errors may give rise to a due process

2   violation if it renders a trial fundamentally unfair, even where each error considered individually

3   would not require reversal.  Parle, 505 F.3d at 927 (citing Donnelly, 416 U.S. at 643, and

4   Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  "[T]he fundamental question in

5   determining whether the combined effect of trial errors violated a defendant's due process rights

6   is whether the errors rendered the criminal defense 'far less persuasive,' and thereby had a

7   'substantial and injurious effect or influence' on the jury's verdict."  Parle, 505 F.3d at 928

8   (internal citations omitted); see also Hein, 601 F.3d at 917 (same).

9          As set forth above, this court has addressed each of petitioner's claims and has concluded

10  that no error of constitutional magnitude occurred.  This court also concludes that the alleged

11  errors, even when considered together, did not render petitioner's defense "far less persuasive,"

12  nor did they have a "substantial and injurious effect or influence on the jury's verdict."

13  Accordingly, petitioner is not entitled to relief on his claim of cumulative error.

14  VI.  Conclusion

15         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

16  habeas corpus be denied.

17         These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

22  he shall also address whether a certificate of appealability should issue and, if so, why, and as to

23  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

24  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

25  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

26  ////

27  ////

28  ////

42

1  service of the objections.  The parties are advised that failure to file objections within the

2  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

3  F.2d 1153 (9th Cir. 1991).

4  Dated:  April 27, 2022

5

6  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

7

8  /TAA/turn1088.157

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28